WARD, Judge.
On January 13, 1983 a jury convicted Gerald Broussard of the second degree murder of Guy Jarreau for which he received a sentence of life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence. This court affirmed Brous-sard’s conviction and sentence on an errors patent appeal. State v. Broussard, 450 So.2d 727 (La.App. 4 Cir.1984). Pursuant to Lofton v. Whitley, 905 F.2d 885 (5th Cir.1990) Broussard has been granted an out-of-time appeal.
The facts of the offense are set out in this court’s original opinion:
At about 4:30 p.m. on June 21, 1981, Officers Sheila Coll, and Richard Taggard responded to a call of a shooting at 2115 Pauger Street in Orleans Parish. They found Joseph Zardies lying on the sidewalk by the curb at 2119 Pauger and Guy Jar-reau in an alley across the street, lying on his back with his feet up against the fence. Zardies was treated for gunshot wounds; Jarreau was pronounced dead.
Zardies testified that he had denied knowledge of his assailant’s identity when questioned at the scene of the crime and immediately after at the hospital because he was afraid someone would ‘come after him’ if he ‘ratted,’ since he and his assailant frequented the same neighborhood. Zardies then decided to cooperate with the police and positively identified the defendant from a photo line-up a few weeks after the crime. Zardies explained that he had been sitting on the front steps of a residence on Pauger Street when the defendant shot him in the chest. When he started to walk away the defendant shot him twice more, and he fell down near the curb. He heard two more gunshots and saw Guy Jarreau run down the alley across the street. He then saw the defendant stick a pistol through a fence enclosing the alley and shoot Jarreau in the chest.
The defendant denied shooting either Zardies or Jarreau, testifying that he was with Barbara Williams at the time. He was unable, however, to state any specific time he was with Williams on June 21, 1981. Williams was similarly unable to specify when the defendant arrived at her house, insisting only that he had spent the night with her.
Id. 450 So.2d at 728.
A review of the record reveals no errors patent.
In his first assignment of error, Broussard complains that the trial court erred by giving a jury charge on reasonable *528 doubt which had been found unconstitutional in Cage v. Louisiana, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990). A review of the record shows that no objection was made by defendant to the reasonable doubt instruction. The failure to object precludes appellate review. State v. Lionel Berniard, 625 So.2d 217 (La.App. 4 Cir.1993), on rehearing; State v. Dobson, 578 So.2d 533 (La.App. 4 Cir.1991), writ denied 588 So.2d 1110 (La. 1991).
An objection not only preserves the issue for appellate review, it first notifies the trial court that counsel does not agree with the instructions. Next, a contemporaneous objection gives the trial court an opportunity to consider counsel’s complaint, an opportunity to reflect on the law and to correct an error if the trial court becomes convinced of it. Without an objection, the trial court may well conclude that counsel agrees with the instructions, or even desires it. The so called Cage instructions were not so one sided that they did not contain a strong emphasis of the heavy burden of the state and the duty of the jury to acquit. In any event, without a contemporaneous objection, the trial court will not even have an opportunity to make a decision on the issue. Certainly, justice dictates that a defense attorney not be able to sit quietly while knowing the court errs in its instructions, with the hope that the defense will later profit by this error through reversal of an adverse verdict based on the erroneous charge.
The Cage charge was not a “patent” jury charge, and at the time of trial the condemned jury charge of Cage was not universally given. The argument that the Cage instruction would have been given in spite of any objection is sheer speculation and demeaning to trial courts as an inference that they would not listen to well reasoned argument. Neither Cage nor Sullivan v. Louisiana, — U.S.-, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) have held that Louisiana’s procedural law requiring a contemporaneous objection does not apply to jury charges. This assignment is without merit.
In his second assignment of error, Broussard argues that the State withheld exculpatory evidence requested in pretrial discovery motions. Broussard claims a statement given by Joseph Zardies to Detective John Miller on July 1, 1981 is exculpatory in nature, and should have been disclosed. Broussard contends Zardies’ statement to Miller contradicts Zardies’ trial testimony that he actually saw Broussard shoot Guy Jarreau and that Jarreau was not armed.
Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1197, 10 L.Ed.2d 215 (1963), held that “the suppression of evidence favorable to-an accused upon request violates due process where the evidence is material either to guilt or punishment.” See also La.C.Cr.P. art. 718. This rule includes evidence which impeaches the testimony of a witness where the reliability or credibility of the witness may be determinative of guilt or innocence. Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).
Evidence is material, hence discoverable, if there is a “reasonable probability” that the outcome of the trial would have been different had the evidence been disclosed to the defense. United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). But the mere possibility that undisclosed information might have helped the defense or affected the outcome does not establish the materiality of that information. United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). The undisclosed information must be evaluated in the context of the entire record; and, if there is no reasonable doubt about the defendant’s guilt, irrespective of this evidence, there is no justification for a new trial. State v. Baker, 582 So.2d 1320 (La.App. 4 Cir.1991), writ denied 590 So.2d 1197 (La.1992).
At trial, Zardies testified that Broussard shot him. After he was shot, as he lay on the ground, he saw Broussard shoot Jarreau. Zardies testified that Jarreau was not armed.
In his statement to police Zardies stated that after Broussard shot him, he fell to the ground, closed his eyes, played dead, and heard the defendant walk off. In that statement, he said that he tried to get up but could not and that he heard another shot. People were running around him, telling him not to move. He told the police that those people told him that Broussard killed Jar- *529 reau. He said he did not know if Jarreau was armed but believed that Jarreau was not.
During trial, Zardies admitted that he had given a contradictory statement to police, and that in that statement he denied that he knew the person who shot him when he was questioned by police at the hospital. Zardies explained that he was afraid someone would “come after him” if he “ratted” since he and Broussard frequented the same neighborhood. He acknowledged that another reason for not disclosing Broussard to the police was that he thought he would take “revenge”. Tr. p. 85.
We do not have to decide whether this is “Brady” material, because any error in not producing the material in discovery was harmless beyond a reasonable doubt. It is harmless because Zardies admitted the prior inconsistent statement, although he explained why he made it. Counsel forcefully brought to the jury’s attention the inconsistency, and the jury had an opportunity to consider the impeachment value of it, and to weigh Zar-dies’ credibility in light of it. Considering the undisclosed statement of Zardies in the context of the entire record, it does not appear that there is a reasonable probability that the outcome of the trial would have been different had the statement been disclosed to the defense. Accordingly, this assignment of error is without merit.
For the foregoing reasons Broussard’s conviction and sentence are affirmed.
AFFIRMED.