686 So.2d 1021 (1996)
STATE of Louisiana
v.
Joseph M. HAMPTON.
No. 94-KA-1943.
Court of Appeal of Louisiana, Fourth Circuit.
December 27, 1996.
*1022 Harry Connick, District Attorney, Susan M. Erlanger, Assistant District Attorney, Parish of Orleans, New Orleans, for State.
Dwight Doskey, Orleans Indigent Defender Program, New Orleans, for Joseph M. Hampton.
Before SCHOTT, C.J., and BARRY and KLEES, JJ.
BARRY, Judge.
The defendant was convicted of second degree murder (La.R.S. 14:30.1) and sentenced to life imprisonment without benefit of probation, parole, or suspension of sentence. The issues are 1) sufficiency of the evidence; 2) disclosure of grand jury testimony; 3) admissibility of evidence; 4) ineffective assistance of counsel. We affirm.

Facts
On June 14, 1992 Gwendolyn Bannister hosted an outdoor party for her young son. Anthony Garrison was the disc jockey, and Durrell Robinson, the victim, helped him set up the equipment on the front porch of the apartment building.
Bannister testified that the defendant, known as "Chim Chim," was with Mark Singer. Bannister heard Singer say, "He knocked you out the night before. He's walking around looking pretty and you're not. You're going to let that go like that?" Bannister did not hear whether the defendant responded.
At about 11:00 p.m., Bannister, a female friend, and a young child were on the porch with Garrison and Robinson as they began removing the equipment. Bannister heard gunfire, looked up, and saw Singer firing a large weapon. She ran to protect the child, and testified that she saw the defendant on the sidewalk shooting a small gun toward the porch. Bannister said the victim lay on the *1023 porch and told her he had been shot. She said no one on the porch was armed.
Garrison testified that earlier in the evening, he saw the defendant and the victim shake hands twice, apparently to reconcile after a fistfight they had the previous night. Garrison said the victim told him the matter was "squashed."
Garrison testified that just before the shooting he saw four or five armed men in the alley across the courtyard. He recognized the defendant ("Chim Chim"), Singer, and a man known as Darrell. Singer was carrying an assault rifle and the defendant a handgun. Garrison urged Robinson to leave, but Robinson refused. Gunfire erupted and Garrison hid behind a speaker. He saw "fire" coming from Singer's rifle, but did not see the defendant.
Bannister and Garrison identified the defendant in a photographic lineup and at trial.
Officer Michael Harrison responded to the shooting. The entire police report is not in the appellate record, but Harrison testified that Garrison gave a statement at the scene describing one subject who was shooting, which Bannister's statement corroborated. Both witnesses gave the police a description of Singer's clothing.
Detective James Stewart testified that the defendant was arrested on June 17, 1992. Det. Stewart said that the defendant waived his rights and made a statement that Singer wanted to fight the victim, but the defendant told him the matter was "squashed." Singer retrieved an assault weapon from the grass and began shooting.
Pathologist Dr. William Newman performed an autopsy on Robinson's body and testified that he could not determine what type of gun killed the defendant.

Errors Patent Review
Counsel filed a brief requesting a review for errors patent. Counsel complied with the procedures outlined by Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), as interpreted by this Court in State v. Benjamin, 573 So.2d 528 (La.App. 4th Cir.1990). Counsel's detailed review of the procedural history and facts indicate a thorough review of the record. Counsel moved to withdraw because, after a conscientious review of the record, he believes that there is no non-frivolous issue for appeal. Counsel reviewed all transcripts and found no trial court ruling which arguably supports the appeal. A copy of the brief was forwarded to the defendant informing him of his right to file a brief on his own behalf, which he did.
This Court performed an independent, thorough review of the pleadings, minute entries, bill of indictment, and transcripts. The defendant was properly charged by bill of indictment with a violation of La.R.S. 14:30.1 and the bill was properly signed. The defendant was present and represented by counsel at arraignment, motion hearings, jury selection, trial, and sentencing. Sufficiency of the evidence was raised by the defendant pro se and is discussed below. The sentence is legal.

Sufficiency of Evidence
The defendant contends that the verdict was contrary to the law and evidence, the State failed to prove specific intent, and failed to remove every reasonable hypothesis of innocence. He argues that Bannister was not credible, that there was no evidence that he shot the victim in a calculated manner and, therefore, there can be no inference of specific intent.
To determine whether the evidence is sufficient, this Court must decide whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).
Second degree murder is the killing of a human being when the offender has the specific intent to kill or to inflict great bodily harm. La.R.S. 14:30.1. Intent to kill has been found where the defendant shot a gun at the victim. State v. Davis, 93-0663 (La. App. 4 Cir. 2/25/94), 633 So.2d 822, writ den. 94-2077 (La.9/20/96), 679 So.2d 422.
*1024 La.R.S. 14:24 defines "principal" as a person
concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime....
A person may only be convicted as a principal for a crime for which he personally has the requisite mental state. State v. Marshall, 94-1282 (La.App. 4 Cir. 6/29/95), 657 So.2d 1106, 1108.
Specific intent exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La.R.S. 14:10(1). It may be proved by direct evidence or inferred from the circumstances or the defendant's actions. Id.
In State v. Marshall, supra, a witness testified that the defendant was at the scene with a gun when the first shot was fired and the victim fell. On cross examination he said the defendant shot the victim. Another witness testified that the defendant had two guns and his codefendant fired repeated shots into the victim. One witness heard two guns. The defendant and codefendant fled the scene. Marshall held:
The jury made credibility determinations and could have reasonably inferred the requisite specific intent. When viewed in the light most favorable to the prosecution, the evidence is sufficient to prove beyond a reasonable doubt that the defendant actively participated in or aided and abetted in the commission of the killing of (the victim) with the specific intent to kill or to inflict great bodily harm.
State v. Marshall, 657 So.2d at 1108-1109.
Garrison testified that before the shooting he saw the defendant and four men. All were armed and the defendant had a handgun. When the shooting began, Garrison hid behind a speaker and did not see the defendant fire his weapon. Bannister also saw the defendant with a handgun just before the shooting. As she ran on and off the porch she saw the defendant repeatedly shooting toward the victim. A .44 caliber bullet found near the sidewalk.
The evidence clearly proved beyond a reasonable doubt that the defendant participated in or aided and abetted in the murder of Robinson with the specific intent to kill or to inflict great bodily harm. State v. Marshall, supra.

Grand Jury Testimony
The defendant argues that the trial court erred by refusing to disclose Bannister's grand jury testimony because her pretrial statements and trial testimony conflicted. He argues that he should have been provided with the grand jury testimony for impeachment purposes. He does not contend that Bannister perjured herself before the grand jury.
The defense moved for pretrial disclosure of the grand jury transcripts and an inspection of the district attorney's file. The trial court ordered an in camera review. There is no ruling in the record and nothing to show that the defense received the grand jury transcript of Bannister's testimony. The docket master states that the defense filed a copy of the grand jury testimony of Garrison into the record on January 26, 1993, and a portion of that testimony is in the record.
Generally, a grand jury proceeding is secret except to show irregularities in the grand jury proceeding or perjury before the grand jury. La.C.Cr.P. art. 434. The purpose of that rule is to encourage the full disclosure of information. State v. Ates, 418 So.2d 1326, 1329 (La.1982). A witness's grand jury testimony is inadmissible to prove the witness's prior inconsistent statement. State v. Terrebonne, 256 La. 385, 236 So.2d 773, 776 (1970). The exception to show that a witness committed perjury
contemplate[s] that the evidence of the inconsistent statements will be used in a prosecution [of the witness] after a proper charge for the specific crime [of perjury]. It does not mean that the district attorney may use the record of the proceeding before *1025 the grand jury to impeach a witness at the trial.
State v. Terrebonne, 236 So.2d at 776.
Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), dictates that upon request the state must produce evidence that is favorable to the accused where it is material to guilt or punishment. That rule has been expanded to include evidence which impeaches the testimony of a witness where the reliability or credibility of that witness may be determinative of guilt or innocence. Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); State v. Grubbs, 93-2559 (La.App. 4 Cir. 10/25/94), 644 So.2d 1105, 1110, writ den. 94-2880 (La.5/5/95), 654 So.2d 323.
Evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985); State v. Grubbs, 644 So.2d at 1110. The undisclosed information must be evaluated in the context of the entire record. If there is no reasonable doubt about the defendant's guilt irrespective of that evidence, a new trial is not warranted. State v. Broussard, 93-0326 (La.App. 4 Cir. 1/13/94), 631 So.2d 526, 528, writ den. 94-0377 (La.11/18/94), 646 So.2d 376.
In an effort to balance the competing interests of Brady and the secrecy of grand jury proceedings, the Louisiana Supreme Court has authorized an in camera inspection by the trial judge of a grand jury transcript. State v. Peters, 406 So.2d at 191; State v. Grubbs, 644 So.2d at 1111. Disclosure after in camera review for Brady material is in the sound discretion of the trial judge. State v. Trosclair, 443 So.2d 1098, 1103 (La.1983), cert. dismissed, 468 U.S. 1205, 104 S.Ct. 3593, 82 L.Ed.2d 889.
The defendant argues that Bannister's statements to police, pre-trial and trial testimony were inconsistent, that she was not credible, and that her testimony was determinative of his guilt. Although the record does not reflect whether the trial court conducted the in camera inspection, a new trial is not warranted despite any failure to order production of Bannister's grand jury testimony.
Officer Harrison testified that the night of the shooting Bannister described Singer. Defense counsel extensively cross examined Officer Harrison concerning his initial police report which, according to the testimony, reflected that on the night of the incident Garrison and Bannister told Officer Harrison that only one person was shooting. At the September 7, 1993 motions hearing, Bannister first testified that she saw Singer shooting; she later testified that both Singer and the defendant were shooting. At trial she testified that she first saw Singer shooting, then saw the defendant running back and forth on the sidewalk, shooting toward the porch. She explained that initially she only described Singer to police because she "still was shocked."
Thus, the police report and testimony from pre-trial motions were available to the defendant for impeachment purposes. The jury was aware of any inconsistency between the police report and Bannister's testimony and weighed Bannister's credibility in light of those inconsistencies. There is no reasonable probability that Bannister's grand jury would have affected the outcome of trial. See State v. Grubbs, 644 So.2d at 1111.

Admissibility of Evidence
The defendant contends that the trial court erred by admitting into evidence the .44 caliber bullet found near the porch. He argues that the bullet was irrelevant and prejudicial. According to Detective Stewart the bullet would fit a handgun but not an assault rifle.
An irregularity or error cannot be raised on appeal unless an objection was made at the time of the occurrence. La.C.Cr.P. art. 841. The defendant did not object at trial so the issue is not subject to review.

Ineffective Assistance of Counsel
The defendant asserts that trial counsel was ineffective because (1) the State withheld *1026 exculpatory evidence; (2) trial counsel failed to investigate plausible defenses; (3) counsel failed to develop impeachment evidence of Bannister and Det. Stewart; (4) counsel failed to object to crucial trial court errors; and (5) counsel refused to allow the defendant and his witnesses to testify.[1]
The defendant acknowledges that ineffective assistance of counsel is appropriately raised in an application for post conviction relief where a full evidentiary hearing can be conducted. State v. Prudholm, 446 So.2d 729, 737 (La.1984); State v. Johnson, 557 So.2d 1030, 1033 (La.App. 4th Cir.1990). Only if the record discloses sufficient evidence to rule on the merits of the claim do the interests of judicial economy justify consideration of the issue on appeal. State v. Seiss, 428 So.2d 444, 449 (La.1983); State v. Johnson, 557 So.2d at 1033.
We do not know whether the State withheld exculpatory material, such as a police report, pretrial statement, or items from the district attorney's files. The record does not show why counsel may have decided not to call certain witnesses.
Therefore, defendant's arguments are not considered. Defendant may raise those issues in a timely application for post conviction relief.

Jury Instructions
The defendant complains that the trial court erroneously instructed the jury but he did not specify which instruction was erroneous. Despite being given additional time to file a brief the defendant did not do so. We do not consider the defendant's argument because it was not briefed and is deemed abandoned. State v. Bray, 548 So.2d 350 (La.App. 4th Cir.1989); Rule 2-12.4, Uniform Rules, Courts of Appeal. We note that the transcript of jury instructions does not contain an objection. That assignment is without merit.
The conviction and sentence are affirmed. Counsel's motion to withdraw is granted.
AFFIRMED.
NOTES
[1] Assignment number three alleges that defendant was denied the right to testify and present witnesses. However, no separate argument is made.