KLEES, Judge.
Troy Bush was charged by grand jury indictment with the second degree murder of Edward Roberson. On November 5, 1990, the jury returned with a verdict of guilty as charged. The appellant’s motion for new trial was denied on November 13, 1990. After waiving all legal delays, he was sentenced to serve life imprisonment at hard labor. He appeals.

FACTS

James Gibson was managing the Starlight Lounge located at 5200 Burgundy Street. He testified that on April 12,1990 at approximately 1:30 A.M. he observed Troy Bush run from the men’s bathroom being chased by the victim Edward Roberson. Upon reaching the front door of the lounge, Bush turned and fired three shots. Two of the bullets struck the victim. The victim was unarmed. Mr. Gibson stated that he and another man ran outside the lounge where he saw Bush run across the street to a parked car. Troy Bush failed in his attempt to enter the car and fled down the street. Mr. Gibson subsequently selected the appellant’s picture from a photographic lineup.
Percy Gibson was deejaying for the first time that night at the Starlight Lounge and his testimony corroborated that of James Gibson.[1] Percy Gibson was a personal friend of the victim and suggested that robbery might have been a factor in the shooting. Edward Roberson had been wearing a gold medallion earlier in the evening and the body was found without the medallion. Mr. Gibson also selected Bush’s picture from a photographic lineup. Neither Percy nor James Gibson knew Bush.
Detective Jose Quiroz of the New Orleans Police Department conducted the photographic lineup. He testified that three of the four eyewitnesses to the shooting selected Bush’s picture from the photographs.
Troy Bush’s mother, sister, and neighbor testified that he was at home on the night of the murder. Each recalled having seen Bush between ten-thirty and eleven at night, and again around two in the morning.

ERRORS PATENT REVIEW

A review of the record for errors patent shows that the sentence imposed is illegally lenient. The penalty for a violation of R.S. 14:30.1 is as follows: “Whoever commits the crime of second degree murder shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.” On November 13, 1990 the relator was sentenced to serve the rest of his natural life at hard labor; however, the trial court failed to stipulate that the sentence was to be served without parole eligibility. On appeal, this Court will not correct errors favorable to a defendant where the issue is not raised by the State. State v. Fraser, 484 So.2d 122 (La.1986). As the State has not raised this issue, the error should not be corrected. No other errors patent were found.

ASSIGNMENT OF ERROR NUMBER ONE

In his first assignment of error, Bush alleges that the trial court erred in allowing the State to impeach the defense witnesses with grand jury testimony.
During cross-examination of the appellant’s mother, Shirley Bush, the prosecutor asked the witness how she knew it was around 11:00 o’clock when her son came out of his room. She responded that it was because “Sanford and Son” was on the television. The State attempted to impeach her testimony by asking her whether she remembered testifying before the grand jury that she did not have a working television and that she did not watch television that night. Ms. Bush responded, “no, I did not.” Ms. Bush then stated that she was reminded of *81 watching television by her daughter, Taikai. She stated that she had asked her daughter to bring a black and white television set into the living room so they could watch television.
The State also tried to impeach Ms. Bush’s testimony when she testified at trial that her neighbor, Ms. Marion White, left the living room only to go to the bathroom. Before the grand jury, Ms. Bush testified that Ms. White did not leave the living room to go to the bathroom.
Next, the State attempted to impeach the testimony of Marion White. Ms. White testified at trial that the appellant came out of his room around 10:30 to get a drink of water and roughly an hour later to get a cigarette from his mother. On cross-examination, the prosecutor asked whether Ms. White remembered telling the grand jury about the cigarette and Ms. White answered, “they didn’t ask me that.”
The general rule concerning grand jury testimony is that the proceedings of the grand jury are to be secret. La.C.Cr.P. art. 434. The purpose of this rule is to encourage the full disclosure of information about crimes. State v. Ates, 418 So.2d 1326, 1329 (La.1982). The Louisiana Supreme Court has held that the testimony of a witness before a grand jury is inadmissible to prove a witness’ prior inconsistent statement at trial. State v. Terrebone 256 La. 385, 236 So.2d 773 (1970); State v. Ivy, 307 So.2d 587 (La.1975).
Most cases dealing with the use of grand jury testimony deal with a defendant’s attempt to obtain a copy of the transcript to be used at trial for impeachment purposes.[2] However, in the case at hand, the State having access to the transcript, used the testimony in an attempt to impeach the testimony of two defense witnesses.
In State v. Ivy, supra, the court held the State’s use of the grand jury testimony to impeach a defense witness to be error; however, it found the error harmless. The court noted that the evidence against the defendant was overwhelming, that the testimony was limited in that its use was restricted to a single witness, and that a copy of the testimony was made available to defense counsel. Id. at 592.
Like Ivy, in the case at hand, it appears that the error was harmless. Three eyewitnesses were certain of their identification of Troy Bush as the gunman. Defense counsel was provided vrith a copy of the grand jury testimony. Although the State attempted to use the grand jury testimony in an attempt to impeach two defense witnesses, the attempt against Ms. White was most limited and consisted of testimony not before the grand jury. Thus, this assignment is without merit.

ASSIGNMENT OF ERROR NUMBER TWO

In his second assignment of error, the appellant alleges that the trial court gave an erroneous Cage jury instruction. See Cage v. Louisiana, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990). However, in accordance with State v. Dobson, 578 So.2d 533 (La.App. 4th Cir.1991), writ den. 588 So.2d 1110 (La.1991) this Court has consistently held that a defendant’s failure to object to such a charge precludes review of the assignment of error. See also C.Cr.P. arts. 801 and 841. In State v. Berniard, 625 So.2d 217, 92-KA-2020 (La.App. 4th Cir.1993) this Court refused to overrule Dobson, supra.
A review of the record in the instant case indicates that appellant failed to object to the jury charge. This assignment is without merit.
Accordingly, for the reasons expressed above defendant Troy Bush’s conviction and sentence are hereby affirmed.

AFFIRMED.

PLOTKIN, J., dissents with reasons.

. James Gibson is not related to Percy Gibson.

. In State v. Martin, 376 So.2d 300 (La.1979), cert. den. 449 U.S. 998, 101 S.Ct. 540, 66 L.Ed.2d 297 (1980), the court held that unless the request for the grand jury testimony falls within either of the two exceptions listed in the article (either to reveal statutory irregularities in grand jury proceedings or to show that a witness committed perjury in his testimony before the grand jury) it cannot be used for impeachment on cross-examination.